No. 23674.

SAFARI OUTFITTERS, INC. *v.* SUPERIOR COURT IN AND FOR THE CITY AND COUNTY OF DENVER, STATE OF COLORADO, THE HONORABLE CHARLES E. BENNETT, AND LLOYD POWERS.
(448 P.2d 783)

Decided December 16, 1968.    Opinion modified and as modified rehearing denied January 13, 1969.

458

DAVIS, GRAHAM & STUBBS, DAVID M. EBEL, for petitioner.

V. G. SEAVY, for respondents.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS is an original proceeding in which Safari Outfitters, Inc., hereinafter called petitioner, requests that this Court issue a writ of prohibition to prevent the Denver Superior Court, hereinafter called respondent, from exercising *in personam* jurisdiction over it pursuant to Colorado's "long-arm" statute, 1965 Perm. Supp., C.R.S. 1963, 37-1-26, and 37-1-27.

In a complaint filed in the respondent court, Lloyd Powers alleged that petitioner had breached a contract to arrange an African safari for him, and that he had suffered damages in the sum of $3,600. Petitioner was personally served with a summons and complaint in Chicago. Through its Denver counsel, Petitioner appeared specially in the respondent court and filed its motion to quash service. The motion having been denied, petitioner sought a writ of prohibition from this Court, and we issued a rule to the respondent court, the judge thereof and Lloyd Powers to show cause why the relief should not be granted.

Petitioner contends that the asserted jurisdiction (a) is not authorized by the "long-arm" statute, and (b)

is in violation of the constitutional guaranty of due process. We agree and therefore make the rule absolute.

▉ Following the lead of several other states, in 1965 our legislature subjected any person who engages in "[t]he transaction of any business within this state" to the jurisdiction of our courts. Once subject to jurisdiction, the defendant may be served personally with a summons outside the state. 1965 Perm. Supp., C.R.S. 1963, 37-1-26, and 37-1-27.

▉ By enacting the latter statutes, our legislature intended to extend the jurisdiction of our courts to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution. See *Agrashall, Inc. v. Bernard Sirotta Company,* 344 F.2d 583.

▉▉ Due process requires that in order to subject a defendant to a judgment *in personam,* if he is not within the forum state, he must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057; *White-Rodgers Co. v. District Court,* 160 Colo. 491, 418 P.2d 527; and *Bolger v. Dial-A-Style Leasing Corporation,* 159 Colo. 44, 409 P.2d 517. But "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with a forum State . . . [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283.

With the general principles above set forth in mind, we review the record. The affidavits and exhibits before us disclose that the petitioner advertised in three nationally distributed sportsmen's magazines in each of

several months from 1966 to 1968. Responding to one of the advertisements, which he saw in a magazine delivered to his Denver home, Lloyd Powers wrote to inquire further of petitioner, which has offices in Chicago. Petitioner mailed brochures and a newsletter to Powers. At least one interstate telephone call was made. Thereafter numerous communications were made by interstate mail; some sixteen letters appear in the record as exhibits, most of them addressed to Powers at his Denver residence. There are also copies in the record of three checks, totalling over $10,000, drawn on a Denver bank by Powers, and made payable to petitioner, who accepted them as payment for his services. Moreover, petitioner mailed numerous tickets, itineraries, brochures, passports and other documents to Powers in Denver.

There is no dispute regarding the facts just summarized. Therefore the question which we must resolve is whether, on these particular facts, jurisdiction is constitutionally permissible pursuant to the terms of our "long-arm" statute. We answer that question in the negative.

■ Advertising in national magazines distributed within the forum state does not alone constitute a transaction of business within that state. See *Bolger v. Dial-A-Style Leasing Corporation, supra.* If the rule were to the contrary, advertisers in any nationally distributed magazine would be subject to the jurisdiction of each of the states in which the magazines are distributed. *Insull v. N. Y. World-Telegram Corp.*, 273 F.2d 166. Such a contact is simply too tenuous upon which to found a claim of jurisdiction. See *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F.2d 502.

■ Nor do the interstate telephone conversations, correspondence, and the receipt in Illinois by petitioner of checks drawn on a Denver bank by respondent Powers constitute acts by which the petitioner purposefully availed himself of the privilege of conducting activities

within Colorado, thus invoking the benefits of its laws. See *Scheidt v. Young*, 389 F.2d 58; *Agrashall, Inc. v. Bernard Sirotta Company, supra*; and *Old Westbury Golf and Country Club, Inc. v. Mitchell*, 44 Misc.2d 687, 254 N.Y.S.2d 679.

In *Scheidt v. Young, supra*, New Jersey plaintiffs read defendant's advertisement in a New York newspaper circulated in New Jersey. Plaintiffs called the Pennsylvania defendants and reached an agreement with regard to their accommodations, date of arrival and length of stay at defendant's Pennsylvania lodge. They also telegraphed a thirty-five dollar deposit. After suffering an injury at the lodge, plaintiffs attempted to sue in a New Jersey Federal District Court, and served process on the defendant in Pennsylvania. The Court of Appeals affirmed the judgment of the District Court, which had quashed the service because there were insufficient minimum contacts to sustain the jurisdiction. See also *Dowd v. Boro Drugs, Inc.*, 70 N.J. Super. 488, 176 A.2d 13.

■ It appears from the record in the instant case that petitioner was to act as an agent in arranging the African safari for Powers. That is, petitioner was employed by Powers in Chicago to make reservations, to purchase the necessary tickets, to schedule itineraries, and in general to handle all of the stateside work required to make the safari a success. Once Powers arrived in Africa, local safari guides were to see to it that he was given an opportunity to take the trophies of his choice.

There is nothing in the record to indicate that any of petitioner's work as an agent was done in Colorado. To the contrary, it appears that all of his work was done by telephone, telegraph and letter correspondence directed from petitioner's Chicago office to persons outside Colorado. Many of the letters in the record, for example, refer to various communications with African guides. Besides the brochures and leaflets which were sent in

462

response to Powers' inquiry, only passports, travel plans, tickets and the like were sent to Denver.

Under all of the circumstances disclosed by the record in this case, it would be a mere fiction to hold that petitioner had minimal contacts in Colorado sufficient to meet the due process test so as to enable a Colorado court to exercise "long-arm" jurisdiction over him.

The rule is made absolute.